# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEPHEN RICHARDS, JAMES PAULL, TONY ERICKSEN, RICHARD MARKER, CODY LEAMASTER, MARK KAUFFMAN, CHAD BUNTING and BRENNAN COCHRAN as TRUSTEES OF THE UTAH SHEET METAL WELFARE TRUST FUND; UTAH SHEET METAL PENSION TRUST FUND; UTAH SHEET METAL VACATION AND HOLIDAY FUND; UTAH SHEET METAL EDUCATION AND TRAINING FUND; SHEET METALMARKET RECOVERY FUND; UTAH SHEET METAL CONTRACTORS INDUSTRY FUND; and SHEET METAL WORKERS LOCAL UNION NO. 312;<br><br>Plaintiffs;<br><br>v.<br><br>C&C SHEET METAL and CASEY JONES JR.;<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT<br><br>Case No. 2:18-cv-00448-JNP<br><br>District Judge Jill N. Parrish |

The plaintiff trust funds sued defendants C&C Sheet Metal and Casey Jones Jr., alleging that they failed to make required contributions to various employee and owner-member benefit trust funds. The defendants defaulted. Before the court is the plaintiffs' motion for the entry of a default judgment. [Docket 24.]

The court ordered the plaintiffs to provide additional evidence and argument regarding the proper amount of a default judgment. The court also held an evidentiary hearing on the amount of

damages in this case. Jones appeared pro se at the hearing. The plaintiffs argued that that they were entitled to $31,104.31 in unpaid contributions. They also argued that they were entitled to prejudgment interest, liquidated damages, attorney fees, costs, and administrative fees. As described below, the court awards some, but not all, of the amounts requested by the plaintiffs.

I.       **UNPAID CONTRIBUTIONS**

Under the Employee Retirement Income Security Act of 1974 (ERISA), a successful plaintiff is entitled to an award of any unpaid contributions owed by an employer to a multiemployer employee benefit plan. 29 U.S.C. §§ 1132(g)(2), 1145. ERISA defines an "employer" broadly to include "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5).

The plaintiffs argue that C&C Sheet Metal and Jones owe unpaid contributions to several employee benefit plans. The defendants failed to make payments due on March 10, 2018, April 10, 2018, and May 10, 2018. The missed payments totaled $7,364.51. On June 6, 2018, the plaintiffs sued C&C Sheet Metal and Jones for the unpaid contributions. The complaint alleged that the plaintiffs "are entitled to conduct an employer payroll audit of Defendants in order to determine the amount of contributions that are due from Defendants to Plaintiffs for the period of January 1, 2017 through the present." The complaint requested a judgment for "[t]he unpaid contributions to the Trust Funds."

After the plaintiffs filed the complaint, the defendants missed several more payments. But the defendants started making contributions again for the September, October, November, and December 2018 due dates. In fact, the defendants overpaid in an attempt to catch up on the missed contributions. The defendants paid an additional $4,887.21 to be attributed to the overdue amounts

2

owed. Bur for the January 2019 through April 2019 due dates, the defendants again made inadequate payments or did not make a payment at all.

From March 10, 2018 through April 10, 2019, the defendants underpaid on the contributions owed by a total of $31,104.31. The plaintiffs argue that they are entitled to a default judgment for this entire amount. But as the court noted at the evidentiary hearing, most of this sum is attributable to payments that were missed after the plaintiffs filed their complaint. Thus, the court must decide whether the plaintiffs are entitled to default judgment for amounts owed based upon events that occurred after the complaint was filed.

Awarding amounts in a default judgment that were not demanded in the complaint raises due process concerns. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). "The purpose of this rule is to provide defending parties with adequate notice of the potential damages for which they may be liable." *Boilermaker-Blacksmith Nat. Pension Fund v. A & B Welding & Const., Inc.*, No. 10-cv-2664-CM, 2011 WL 5151965, at *1 (D. Kan. Oct. 28, 2011).

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2663 (4th ed. 2014).

In their complaint, the plaintiffs demanded a judgment for amount's owed "for the period of January 1, 2017 through the present," i.e., the date the complaint was filed. *See Greater St. Louis Const. Laborers Welfare Fund v. A.L.L. Const., LLC*, No. 4:12-CV-1511 CAS, 2014 WL 1648731

3

at *5 (E.D. Mo. Apr. 23, 2014) ("The Complaint in the instant case seeks an audit for the period from April 1, 2007 'to the present,' which the Court interprets as the date the Complaint was filed . . . ."). Thus, the defendants were given notice in the complaint that they could be held liable for unpaid contributions owed up until June 6, 2018. If the plaintiffs wished to give notice of additional amounts sought, they could have filed and served a supplemental pleading seeking amounts for payments that were missed after the original complaint was filed. *See* FED. R. CIV. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). Because the plaintiffs did not file and serve a supplemental pleading, they are only entitled to amounts that were owed when the complaint was filed: $7,364.51. *See Const. Laborers Welfare Fund,* 2014 WL 1648731 at *5.

The defendants are also entitled to an offset for amounts that were paid towards the missed payments. In late 2018 and early 2019, the defendants paid an additional $4,887.21 towards the past due amounts. The court attributes these extra payments to the oldest amounts due first: the March, April, and May 2018 missed payments. Thus, the total amount due for unpaid contributions is $2,477.30.

## II. PREJUDGMENT INTEREST AND LIQUIDATED DAMAGES

ERISA requires the court to award prejudgment interest and a liquidated damages penalty on the unpaid contributions. 29 U.S.C. § 1132(g)(2). The plaintiff trust funds charge 1% simple interest per month on unpaid contributions. *See id.* ("For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . . ."). From May 10, 2018 until the date of judgment, the defendants have been delinquent on the unpaid

contribution amount of $2,477.30 for 12 months. At 1% per month, the court calculates that the plaintiffs are entitled to $297.28 in interest.

Additionally, the plaintiff trust funds assess a 20% liquidated damages penalty. *See id.* at § 1132(g)(2)(C)(ii) (requiring an award of "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions). Thus, the plaintiffs are also entitled to $495.46 in liquidated damages.

## III. ATTORNEY FEES AND COSTS

ERISA requires the court to award "reasonable attorney's fees and costs" associated with this lawsuit. 29 U.S.C. § 1132(g)(2)(D). While the court must enter an award of attorney fees, it is essential that the amount awarded be reasonable. Under this standard, courts must exclude fees for "hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* The court must also consider the degree of the plaintiffs' success in this lawsuit in determining whether the amount of fees sought is reasonable. "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . Again, the most critical factor is the degree of success obtained." *Id.* at 436.

The plaintiffs request an attorney fee award of $16,785. The court determines that this sum is excessive. First, some of the attorney time was not reasonably expended. The plaintiffs' attorney filed a motion for summary judgment before any defendant answered the complaint. Given that this case will be resolved on a default judgment, the time spent on this motion was unnecessary.

5

The plaintiffs' attorney also filed a motion for default judgment before obtaining a default certificate, requiring additional attorney time to correct this error.

Moreover, plaintiffs' attorney has spent a significant amount of time litigating the issue of administrative fees. He raised this issue in the motion for default judgment and briefed it in response to the court's order to provide additional argument and evidence supporting the plaintiffs' request for administrative fees. But ERISA does not authorize an award of administrative fees. Thus, the attorney fee clause found in the statute does not permit an award for time spent on this issue. *See* 29 U.S.C. § 1132(g)(2). The plaintiffs instead rely upon a contract theory to support their request for administrative fees. The collections policy governing this contract claim provides for attorney fees, but only for fees "incurred in . . . collecting . . . delinquent contributions." The attorney fee clause does not authorize an attorney fee award for collecting administrative fees. Therefore, the considerable amount of attorney time spent on the administrative fee issue is not compensable and must be excluded from the attorney fee award.

Second, "the relationship between the extent of success and the amount of the fee award" justifies a reduction. *See Farrar v. Hobby*, 506 U.S. 103, 115–16 (1992) (citation omitted). The plaintiffs argued that they were entitled to $31,104.31 in unpaid contributions, as well as interest and liquidated damages. But, as noted above, they will recover only $2,477.30, along with proportionally reduced amounts for interest and liquidated damages. Thus, the plaintiffs' limited success on its claims further justifies a reduction in the attorney fees awarded.

After reviewing the plaintiffs' billing records, discounting unnecessary attorney time and time spent on issues for which attorney fees may not be awarded, and taking into account the plaintiff's limited success, the court determines that a reasonable fee award in this case is $4,500.

The plaintiffs also request $525 in costs for the filing fee and service of the complaint. The court finds that this sum is reasonable and awards the full amount of costs requested.

## IV. ADMINISTRATIVE FEES

The plaintiffs originally requested $25,935 in administrative fees. The court ordered the plaintiffs to brief three issues related to this request: (1) the contractual basis for the administrative charges, (2) a calculation supporting the requested amount, and (3) whether Jones could be held jointly liable with C&C Sheet Metal for the administrative fees.

In response to this order, the plaintiffs have provided signed documents supporting its claim that C&C Sheet Metal is contractually bound to pay administrative charges on delinquent amounts. In 2007, C&C Sheet Metal agreed to be bound by a collective bargaining agreement (CBA), as well as any extensions or replacements to the agreement. In 2016, a replacement CBA was adopted. The 2016 CBA binds employers to the collections policies adopted by the trustees of the various employee trust funds, including a 2016 Restated Collections Policy. This collections policy provides:

> Employers delinquent in submitting reports and/or paying contributions to the Trust Fund will be assessed administrative charges of $15 per day until the delinquent reports are submitted and/or the delinquent contributions are paid. Administrative charges are not assessed until an employer is delinquent for more than 10 days. Once assessed, administrative charges are calculated from the 10th of the month until the delinquent report(s) are filed and/or the delinquent contributions are paid, or until a lawsuit is filed to compel the filing of the reports and/or the payment of contributions.

The plaintiffs concede that their initial request for $25,935 in administrative fees was not correctly calculated under this administrative fee provision. They instead claim that they are entitled to $4,845 in administrative fees. After reviewing the plaintiffs' calculations, the court finds that this amount is also inflated.

7

The plaintiffs' calculation assesses a $15 daily administrative fee for each monthly due date, which results in stacking of the $15 fee. For example, the plaintiffs assessed a $15 daily fee for the month following a missed January 10, 2018 payment. When C&C Sheet Metal missed their February 10, 2018 payment, the plaintiffs then began to assess a $15 daily fee for both the January missed payment and the February missed payment, leading to a $30 daily administrative fee. The rate then jumped to a $45 daily fee when C&C Sheet Metal missed the March 10, 2018 payment, and so on.

The problem with this method of stacking administrative fees is that it is not permitted under the language of the 2016 Restated Collections Policy. The policy provides that if an employer is delinquent in making contributions, it shall be assessed a daily $15 administrative fee until the employer makes the delinquent payments. Under this language, no matter how many months in a row that the employer is delinquent, the plaintiffs may only assess a total of $15 per day in administrative fees until the employer makes all missed payments.

Reviewing the plaintiffs' records attached to their briefing, the court determines that C&C Sheet Metal was delinquent for a total of 187 days before the plaintiffs filed this lawsuit on June 6, 2018, leading to an administrative fee of $2,805. The plaintiff's records show that C&C Sheet Metal has paid $210 of this amount leading to an outstanding administrative charge in the amount of $2,595.

Finally, the plaintiffs argue that Jones should be held liable in his individual capacity for the administrative fees. The 2007 agreement that is the basis for the contractual claim for administrative fees was between the sheet metal workers' local union and C&C Sheet Metal. The plaintiffs argue, however, that because "Casey Jones" signed the agreement on behalf of C&C Sheet Metal, Jones is also contractually bound to pay the fees. But the court need not address the

plaintiffs' argument. At the evidentiary hearing, Jones stated that the signature on the 2007 agreement was that of his father, Casey Jones, Sr., who was in charge of C&C Sheet Metal at the time. The court finds that the defendant, Casey Jones, Jr., did not sign the 2007 agreement and cannot be held liable for administrative fees in his individual capacity.

In sum, C&C Sheet Metal, but not Jones, is liable for $2,595 in administrative fees.

## CONCLUSION

The plaintiffs are entitled to a default judgment against C&C Sheet Metal and Jones for the following sums:

(1) unpaid contributions in the amount of $2,477.30,

(2) prejudgment interest in the amount of $297.28,

(3) liquidated damages in the amount of $495.46,

(4) attorney fees in the amount of $4,500, and

(5) costs in the amount of $525.

Thus, C&C Sheet Metal and Jones are jointly and severally liable for a total of $8,295.04.

The plaintiffs are also entitled to a default judgment against C&C Sheet Metal for $2,595 for administrative fees.

Signed May 30, 2019.

                                          BY THE COURT

                                          _____
                                          Jill N. Parrish
                                          United States District Court Judge